**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| ROJELIO GALINDO, | § | |
|      Plaintiff, | § | |
| | § | |
| v. | § | NO. EP-11-CV-325-DB-RFC |
| | § | |
| LEO LAWRENCE ALTENBERG, M.D., | § | |
| NORMA AVILA, MEDICAL ASSISTANT, | § | |
| RICHARD THARP, M.D., | § | |
| MR CHAVEZ, HSA, | § | |
| IN INDIVIDUAL CAPACITY | § | |
|      Defendants. | § | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

On this day, the Court considered the pending motions in this cause, including Defendants'

motion to dismiss or for summary judgment, Docket Entry ("D.E.") 22, Plaintiff's motion to

withdraw his claims against certain defendants, D.E. 33, Defendants' motion to strike Plaintiff's

summary judgment evidence, D.E. 40, and Plaintiff's motion for declaratory judgment, D.E. 49.

Ultimately, and after careful review, for the reasons set forth below the Court recommends that

Defendants' motion for summary judgment be **GRANTED**.

**PROCEDURAL HISTORY**

Plaintiff filed an application to proceed *in forma pauperis* with his *Bivens*[1] civil rights

complaint on August 8, 2011.  D.E. 1.  On February, 8, 2012, that motion was granted and Plaintiff's

complaint was filed.  D.E. 4, 5.  Service issued, and on April 12, 2012, Defendants filed a motion

---

[1]*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91
S.Ct. 1999 (1971).

to dismiss or in the alternative motion for summary judgment.  D.E. 22.  On June 4, 2012, Plaintiff

filed a motion to withdraw Defendants Tharp and Chavez.  D.E. 33.  On June 5, 2012, Plaintiff filed

a motion for leave to file opposition to Defendants' motion with his response attached.  D.E. 34.

Defendants filed a reply on June 18, 2012, along with a motion to strike Plaintiff's summary

judgment evidence.  D.E. 39, 40.  On July 11, 2012, Plaintiff filed an opposition to the motion to

strike.  D.E. 45.  Plaintiff filed a motion for declaratory judgment on August 6, 2012.  D.E. 49.  On

August 15, 2012, Plaintiff filed a supplemental response to Defendants motion to strike.  D.E. 55.

### PLAINTIFF'S FACTUAL ALLEGATIONS & CLAIMS

Plaintiff has named the following individuals as defendants in their individual capacities,

alleging that they work, or worked,  at the Federal Correctional Institution at La Tuna, Texas (FCI

La Tuna): Leo Lawrence Altenberg, M.D. ("Dr. Altenberg"), Norma Avila, Medical Assistant

("M.L.P. Avila"),[2] Richard Tharp, M.D. ("Dr. Tharp"), and Mr. Chavez, Health Service

Administration ("HSA") ("HSA Chavez").  D.E. 5 at 1.

Plaintiff alleges that he was injured at FCI Texarkana in March of 2001 when a large piece

of heavy roofing material flew off of a roof and hit Plaintiff.  D.E. 5, Exh. 1.  He alleges that in 2004,

Dr. Tharp, a clinic director who previously worked at FCI  La Tuna, confiscated Plaintiff's

medically-necessary special shoes, shoe supports, and leg braces that had previously been provided

to Plaintiff.  D.E. 5 at 7 ¶ 44 (B), Exh. 1.  He also alleges that Dr. Altenberg at some point removed

Plaintiff's required medical shoes, supports, and braces.  D.E. 5, at 10 ¶ 55, Exh. 7.  He alleges that

this action caused severe pain to his right ankle such that it is very painful to walk, and that shifting

---

[2]  The medical records indicate that Norma Avila is a Medical Licensed Practitioner
("M.L.P.").  D.E. 22 at BN 1.

his weight off of that ankle has caused pain in his knee, hips, back, and neck, resulting in a permanent limp. *Id.*

Plaintiff alleges that he was in "constant serious extreme pain" in his knees, hips, back and neck. D.E. 5 at 7 ¶ 44(A), (C). He alleges that for several months prior to August 2009, his pain had worsened and the pain medication regimen he was on was not helping, that the pain medication provided by Defendants did not stop the constant pain, and that his injury was ongoing. D.E. 5 at 7 ¶ 44(E), Exh. 1.

Plaintiff claims that from August 2009 to October 2010, Defendants, with deliberate indifference, violated Plaintiff's Eighth Amendment rights by constantly depriving Plaintiff of medical treatment, being deliberately indifferent to his chronic pain, refusing to treat him, delaying or preventing proper treatment, and not obtaining an MRI to properly diagnose the cause of his pain. D.E. 5, 34. Plaintiff also claims that Dr. Altenberg deprived Plaintiff of necessary medications in retaliation for Plaintiff filing a grievance against Dr. Altenberg, and that Defendants engaged in a cover-up of such retaliation by not providing evidence of such retaliation in response to Plaintiff's grievance, depriving Plaintiff of due process. D.E. 5 at 9, 10 ¶¶ 51-52, 15 ¶ 90, Exhs. 3, 4. Plaintiff alleges that Defendants' deliberate indifference to Plaintiff's injury and chronic pain caused a permanent limp in Plaintiff's right leg. D.E. 5 at 3 ¶ 15, 7 ¶ 44 (D). Plaintiff seeks punitive damages against Defendants, declaratory and injunctive relief, and all other relief the Court deems necessary. D.E. 5 at 19.

## SUMMARY JUDGMENT EVIDENCE

The following facts are undisputed except where otherwise noted. *See* D.E. 39 at 4 (*citing* D.E. 34 at 9 ¶¶ 54-55, *in turn referencing* D.E. 22, Appendix- Statement of Facts, ¶¶ 2-13, 15-28).

3

Plaintiff was detained at FCI La Tuna from May 2003 to October 2010.  D.E. 5 at 2 ¶ 1; D.E. 22,

Attach. Exh A at 1 ¶ 13.  Plaintiff's records reflect the following:[3]

Plaintiff has a history of asthma, allergic sinusitis, hypertension, esophageal reflux, high

cholesterol, and cervical neuralgia.  D.E. 22, Appx. at 2 ¶ 3, BN 1-2.

On September 3, 2008, Plaintiff complained of chronic knee pain.  D.E. 5, Exh. 10 at 1.

Plaintiff was set for callout on September 9, 2008, but a note indicates that Plaintiff was a no show

at his callout appointment.  *Id.*

On September 21, 2008, Plaintiff had an emergency encounter with Health Services where

he complained of dizziness and a fever that had begun a week before with cold symptoms; Plaintiff

was assessed with an acute upper respiratory infection.  D.E. 5, Exh. 10 at 2-3.  On September 22,

2008, Plaintiff saw MLP Avila with chief complaints of cold or flu symptoms.  *Id.*, at 5.  Plaintiff

was taken to a local hospital for further treatment.  *Id.*, at 6.  On September 25, 2008, Plaintiff was

returned from the hospital.  *Id.*  Plaintiff was seen for followup on September 26, 2008, at which

time he had no complaints.  *Id.*, at 8.

Plaintiff returned to Health Services on September 29, 2008, with no pulmonary complaints,

but complaining about the pain on his left knee getting worse, stating that the knee supports that

were issued are constantly sliding down his legs.  D.E. 5, Exh. 10 at 10.  Upon examination by MLP

---

[3]  Plaintiff provided some of his medical records as attachments to his complaint.  D.E. 5, Exh. 10.  Defendants also provided some of Plaintiff's medical records as attachments to their motion to dismiss or for summary judgment. D.E. 22, Appx., Exh. A, Attach. 2 Bates Stamp Numbers 1-61 (These records will be cited simply as "D.E. 22 at BN [relevant page numbers]") . Plaintiff was provided with both a copy of his entire medical record file and those medical records produced to the Court.  D.E. 26 at 2.  Although Defendants offered to provide the remaining records to the Court upon request, because Plaintiff did not direct the Court to any relevant records not already before the Court, the Court did not request additional records.

Fritz Brutus, Plaintiff was found to have swelling and crepitus, but a normal active and passive full range of motion in his knee, no muscle atrophy, and normal anterior and posterior compartments. *Id.*, at 11.  MLP Brutus assessed asthma, lower leg joint pain, and benign essential hypertension.  *Id.* Among other medications, Plaintiff was prescribed Albuterol and Ibuprofen for joint pain; a knee brace was authorized.  *Id.*, at 11-12.

Plaintiff was treated at Health Services again on October 7 and October 24, 2008, with complaints of a urinary problem.  D.E. 5, Exh. 10 at 13, 15.  Plaintiff was treated at Health Services again on November 18, 2008, with complaints of a skin rash.  *Id.*, at 17.

Plaintiff was treated at Health Services on March 20, 2009, for a pulmonary clinic, with complaints of congestion and sneezing.  D.E. 5, Exh. 10 at 21.  Dr. Altenberg renewed Plaintiff's prescription for Amitriptyline and Ibuprofen for the pain in his joints and his lower leg.  *Id.*, at 23. The record reflects that Plaintiff was scheduled for a chronic care visit on August 20, 2009.  *Id.*, at 24.

Plaintiff alleges he sent a copout to the acting HSA on May 26, 2009, requesting to be sent to a Doctor of Osteopathic Medicine or a Chiropractor.  D.E. 5, Exh. 1 at 1.

Plaintiff alleges that he sent another copout on June 16, 2009.  D.E. 5, Exh. 1 at 1.

On August 13, 2009, Plaintiff sent an inmate request to Dr. Altenburg stating that he had sent a couple of copouts to Ms. Barley to complain of his pain being worse and feeling something is not right or changed in his body, stating he pays close attention to these kinds of things.  D.E. 5, Exhs. 1 at 1, 10 at 36; D.E. 22 at BN 3.  Plaintiff stated that the pain in his neck, back, hips, legs, and joints is "a little much," that the last few weeks he had a lot of swelling in his knees, ankle and shins and

had been retaining a lot of water for some reason. *Id.* The response, dated August 17, 2009, was "Go to sick call." *Id.* Plaintiff was placed on callout for August 17, 2009. D.E. 5, Exh. 1 at 1.

On August 17, 2009, Plaintiff saw Dr. Altenberg at Health Services. D.E. 5, Exh. 1. Plaintiff alleges that when Plaintiff first walked in, Dr. Altenberg called Plaintiff a cry baby, began to recite a nursery rhyme about Humpty Dumpty, and stated that there was nothing that could be done for Plaintiff. D.E. 5 at 8 ¶¶ 44(G)-(J), 13 ¶¶ 70-71, Exh. 1. Plaintiff alleges that Dr. Altenberg refused to provide medical treatment, stating that he *would not* fix Plaintiff's injury. *Id.* Dr. Altenberg did not believe Plaintiff when he said his injuries had been sustained while in custody. D.E. 5, Exh. 1 at 1. Plaintiff left Dr. Altenberg's office without being examined; Plaintiff wanted to have another staff member present, and went to speak with Lieutenant Adams. D.E. 5, Exh. 1 at 2.

The medical records from Plaintiff's encounter with Dr. Altenberg on August 17, 2009, entered at 8:30, reflect that Dr. Altenberg advised Plaintiff that he *could not* do anything for old injuries Plaintiff sustained years ago; Plaintiff said he wanted to call the lieutenant, and Plaintiff left. D.E. 5, Exh. 10 at 26; D.E. 22 at BN 4-6. Shortly after the encounter, at 9:16,[4] Dr. Altenberg made an administrative note to refill medications including Ibuprofen for Plaintiff's pain in his joints and his lower leg and to discontinue Plaintiff's prescription for Amitriptyline, the other medication prescribed for Plaintiff's pain. *Id.*

Plaintiff alleges that on August 20, 2009, he was notified in the pill line that his chronic pain medication had been discontinued by the doctor. D.E. 5, Exh 3. On August 21, 2009, Plaintiff alleges he spoke to the HSA, who did nothing. *Id.* Plaintiff had a family member speak to Mr. Cole,

---

[4] Although the records do not indicate a.m. or p.m., the date stamp on other records indicates that the medical records use military time, such that both 8:30 and 9:16 reflect hours in the a.m.. *See* D.E. 22 at BN 7 (with time stamp of 13:36).

the Regional Health Services Director, who stated that Plaintiff's pain was due to his strenuous workout routine. *Id.* On August 28, 2009, Plaintiff wrote a letter to Mr. Cole. D.E. 5, Exh. 4. In the letter, Plaintiff stated that he had to begin trying to do what he could to work out and lose some weight before he became a diabetic and that it had been extremely painful for him. *Id.* He asked that his chronic pain medication regimen be reinstated immediately. *Id.*

On August 28, 2009, Plaintiff was seen by MLP Brutus in health services with a chief complaint of back pain. D.E. 22 at BN 7-8. The record reflects onset of 12-24 hours and no history of trauma reported. *Id.* Plaintiff rated his pain the night before as a 10 and at the time of the examination as a 5 or 7. *Id.* He also stated that Motrin did not help his pain. *Id.* MLP Brutus found that Plaintiff had full range of motion and no sciatica, but did have tenderness to the back of his neck and to palpation of C7 and on posterior, anterior, and lateral flexion with referred pain from C7 to T10 and itching associated with the pain. *Id.* MLP Brutus assessed sprain and strain of the neck, noting that it was probably DJD (Degenerative Joint Disease), and ordered Plaintiff to continue taking Motrin and prescribed Benadryl. *Id.* At some point that same date, an appointment was set for Plaintiff to see Brutus at 7:30 on September 2nd for severe back pain, no sleep, and medication. D.E. 22 at BN 10.

On September 10, 2009, Plaintiff sent an inmate request to HSA Chavez stating that he had made a sick call today because he is very sick; he is in pain and has the flu pretty bad on top of his asthma acting up. D.E. 5, Exh. 10 at 35. Plaintiff reminded HSA Chavez that Plaintiff had been taken out a few times by ambulance and was concerned that he might have pneumonia again. *Id.*

A record dated September 16, 2009, stated that Plaintiff was placed on callout for 7:30 and was present at 9:30 but was not present at 10 when his name was called. D.E. 22 at BN 11.

On September 17, 2009, Plaintiff sent an inmate request to Dr. Altenberg stating it was his third request to Dr. Altenberg for help with itching.  D.E. 5, Exh. 10 at 34.  Plaintiff suggested the itching was due to the anxiety he feels due to the severe pain that is driving him crazy; he tried Hyrocorizone creme, Claritin, and allergy tablets, but nothing was helping.  *Id.*

On October 1, 2009, during a chronic care visit, Plaintiff complained about constant, generalized, sharp joint pain in his knees, right ankle, neck, and mid-back, which he rated as 8 on the pain scale.  D.E. 22, Appx. at 2 ¶ 9, BN 12.  He stated that his pain started in 2001 when a roof fell on him.  *Id.*  MLP Brutus examined Plaintiff and found him to have symmetrical, referred pain in C7 on cervical flexion, with no limited movement of lateral flexion.  D.E. 22 at BN 13.  He had marked crepitation of the left knee with referred pain on lateral aspect on flexion and extension, but with negative Drawer sign.  *Id.*  MLP Brutus noted some swelling of the lateral mallotus of the right ankle, with no limitation in range of motion and no tenderness on palpation.  *Id.*  Plaintiff also had pitting edema 2/5 in his lower extremities.  *Id.*  MLP Brutus assessed Benign Essential Hypertension and lower leg joint pain.  *Id.*  Plaintiff was noted as reporting that since his elavil was taken from him he had not been able to sleep because of the pain.  *Id.*  MLP Brutus added medication for the hypertension, but otherwise did not change Plaintiff's medications.  *Id.*

On October 2, 2009, MLP Brutus changed Plaintiff's pain medication for the sprain and strain of his neck and pain in his joints and lower leg to Sulindac 150 mg two times a day for 90 days; Ibuprofen 800 mg was discontinued.  D.E. 22, Appx. at 2 ¶ 10, BN 15.

On October 11, 2009, Plaintiff complained that Sulindac was contraindicated for hypertensive patients.  D.E. 22, Appx. at 3 ¶ 11, BN 16.  MLP Brutus explained to him that the pharmacist advised that Plaintiff could take the medication.  *Id.*  Plaintiff further complained that

Sulindac caused him a rash. *Id.*  MLP Brutus then discontinued the Sulindac and prescribed Indomethacin for pain in his joint and lower leg. *Id.*

On October 27, 2009, Plaintiff sent an inmate request to MLP Brutus asking him to please re-issue the Ibuprofen because the new medication was okay, but not strong enough on its own to take away the pain, but Plaintiff found that if he took the Ibuprofen one hour after he took the Indomthacin it helped.  D.E. 5, Exh. 10 at 33.  On November 18, 2009, MLP Avila responded by stamping "make a sick call appointment" *Id.*

On November 2, 2009, Plaintiff sent an Inmate Request to Staff Member to MLP Brutus in Health Services, stating it was his second copout addressed to his attention in reference to MLP Brutus prescribing Plaintiff Ibuprofen 800 mg which was discontinued due to MLP Brutus having prescribed Plaintiff different medication which was not strong enough.  D.E. 5, Exh. 10 at 32; D.E. 22, Appx. at 3 ¶ 12, BN 19.  Plaintiff complained that the new medication, Indomethacin, was ineffective and requested to be placed back on Ibuprofen; stating that he hurt quite a lot and his complaints seem to fall on deaf ears. *Id.*  Plaintiff mentions other new medication that gives him life for an hour after he takes it and helps him to function and get a little bit of rest, about three to four hours per day due to the ever present intense pain in his neck, back, and limbs. *Id.*  On November 4, 2009, Dr. Altenberg responded by instructing Plaintiff to go to sick call.  D.E. 22 at BN 19.

On November 4, 2009, Plaintiff filed a Regional Administrative Remedy Appeal, complaining that the Warden had failed to address Plaintiff's allegations of Dr. Altenberg's inappropriate and unprofessional behavior in humiliating Plaintiff, calling him a crybaby, reciting a nursery rhyme, and ultimately retaliating against Plaintiff for filing a remedy request complaining

9

about his behavior by discontinuing his 8:30 p.m. medications.  D.E. 5, Exh. 6.  Plaintiff alleged that he had suffered for two and a half months.  *Id.*

On November 10, 2009, Plaintiff received a response from Warden Travis Bragg to Plaintiff's request for administrative remedy that had been received on September 1, 2009.  D.E. 5, Exh. 5.  Warden Bragg stated that research into Plaintiff's medical file reflected that Plaintiff had been on several pain medications which were adjusted in response to Plaintiff's reported side effects, and that Plaintiff continued to receive pain medication as noted in his medication record: Plaintiff had been on Ibuprofen and Sulindac as of October 2, 2009, and Indomethacin as of October 13, 2009.  *Id.*

On November 12, 2009, Plaintiff reported to sick call with breathing problems.  D.E. 22 at BN 20-21.  He was seen by MLP Avila for his asthma attack and admitted noncompliance with prescribed medication for his asthma.  *Id.*  No complaint of chronic or joint pain is reflected in that record.  *See id.*  His pain was noted as zero.  *Id.*

A medical record indicates that Plaintiff failed to report to health services for an asthma related treatment on November 13, 2009.  D.E. 22 at BN 24.  Plaintiff disputes the veracity of Defendants' account and states that his asthma-related treatment is not the subject of his complaint.  D.E. 34 at 8 ¶ 56.

On November 24, 2009, Plaintiff sent an inmate request to staff member MLP Avila, complaining of pain medication, requesting Ibuprofen 800 mg be re-prescribed, and responding to her answer to his copout, which he received on November 23, 2009, telling Plaintiff to make a sick call.  D.E. 5, Exh. 10 at 31, D.E. 22, Appx. at 3 ¶ 15, BN 59.  Plaintiff alleged he did make a sick call on November 12, 2009, due to pain and his need for a breathing treatment that MLP Avila

helped him with; he alleges he gave his sick call slip to MLP Avila and signed the hospital log book and needed her help in getting placed on call out so he could get his pain medication, Ibuprophen 800 mg, re-prescribed. *Id.* On December 1, 2009, MLP Avila responded that Plaintiff had been seen for breathing problems and that Plaintiff should sign up for sick call if he had any other medical concerns. D.E. 22 at BN 59.

On December 7, 2009, Plaintiff sent an inmate staff request to HSA Chavez alleging that ever since Dr. Altenberg discontinued his 8:30 p.m. pill for his chronic pain management, his pain issues had gotten seriously worse; he could not sleep or rest due to the pain, and the anxiety caused by the pain triggered Plaintiff's asthma symptoms. D.E. 5, Exh. 10 at 30. Plaintiff alleged that several times when he had been placed on call out he had not been seen or acknowledged by anyone- which he alleged could be verified by Mr. Duran and Counselor Parker and MLP Brutus. *Id.*, at 30.

On January 8, 2010, the Regional Director responded to Plaintiff's remedy appeal alleging that his braces, shoes and supports had been confiscated and his Amitriptyline and Ibuprofen had been discontinued. D.E. 5, Exh. 7. The Director stated that Plaintiff was currently being treated for degenerative arthritis and was prescribed Indomethacin for his condition, and no other medication was indicated at that time. *Id.* He also concluded that the Clinical Director did not confiscate shoes or devices and that such items were not clinically indicated at that time either. *Id.*

On January 14, 2010, MLP Brutus evaluated Plaintiff at the chronic-care clinic. D.E. 22, Appx. at 3 ¶16, BN 25. Plaintiff complained that Indomethacin only reduced his pain for approximately three hours, after which he had to take Motrin for his pain. *Id.* His complaint was that he has constant, aching, throbbing pain in his joints, back of the neck, and in his lower back on a pain scale of 6. *Id.* MLP Brutus noted that Plaintiff had no limited range of motion in his neck and

there was no swelling or neuropathy in his lower extremities, but there was referred pain on the back of his neck on cervical flexion and extention.  D.E. 22 at BN 26.  MLP Brutus assessed strain and pain of the neck and pain in his joints and lower leg, noting that it was probably degenerative joint disease.  *Id.*  MLP Brutus prescribed Ibuprofen, and Ciprofloxacin.  *Id.*

On January 26, 2010, Plaintiff submitted a Central Office Administrative Remedy Appeal in which he complained that the central issue of his complaint was not being addressed: Dr. Altenberg's unprofessional conduct and discontinuation of medication in retaliation for Plaintiff filing a grievance against him.  D.E. 5, Exh. 8.

On February 16, 2010, Dr. Altenberg evaluated Plaintiff at chronic-care clinic noting the chief complaint as pulmonary/respiratory.  D.E. 22, Appx. at 3 ¶ 17, BN 29-31.  Dr. Altenberg performed the straight leg raise test bilaterally, which is used to determine whether low back and leg pain is due to a lumbar herniated disk; the result was negative.  *Id.*  Plaintiff ambulated without pain and his movement and activity was normal.  *Id.*  There was no evidence of pain.  *Id.*  He prescribed Plaintiff Ibuprofen.  *Id.*  The record reflects that a chronic care visit was scheduled for August 15, 2010.  D.E. 22 at BN 31.

On March 1, 2010, Plaintiff's medications for asthma were renewed.  D.E. 22 at BN 32.

On April 23, 2010, Plaintiff reported to Health Services complaining of a sinus headache and difficulty breathing at bedtime and was prescribed antibiotics.  D.E. 22, Appx. at 3 ¶ 18, BN 33-34. The record does not reflect that he expressed any complaints about chronic pain to his neck, hips, legs, back, feet, or arms at that time.  *Id.*

In the early morning hours of May 23, 2010, Plaintiff was transported to the emergency room at Las Palmas Medical Center for shoulder pain.  D.E. 22, Appx. at 3-4 ¶ 19, BN 35-39.  Las Palmas

12

staff took two frontal x-ray views of Plaintiff's right shoulder. *Id*. The x-rays revealed the following: (1) Soft tissue showed no mass or radiopaque foreign body; (2) no definite acute displaced fracture or arthropathy; (3) no definite dislocation; and (4) no right apical pneumothorax. *Id*. The impression was no definite acute displaced fracture. *Id*. Plaintiff was prescribed Ultracet Oral Tablet 37.5-325 mg. *Id*. When he returned, MLP Avila evaluated Plaintiff for complaints of allergy and respiratory problems; she prescribed medications. D.E. 22 at BN 40-41. The record of that encounter reflects a pain scale of 0. *Id*.

On May 25, 2010, Plaintiff reported to Health Services with a complaint of throbbing pain at a pain scale of 8 in his right shoulder and indicated that he injured it two days prior while coming out of a truck. D.E. 22, Appx. at 4 ¶ 21, BN 42. The chief complaint on that form was listed as "Orthopedic/Rheumatology." *Id*. MLP Leticia Perez evaluated him and noted that he had a large hematoma on his right shoulder. D.E. 22 at BN 43. He was able to lift and rotate his right arm and there was no muscle atrophy. *Id*. There were no tremors and there was good capillary filling. *Id*. She noted that he had no swelling in his lower extremities and no ulcers or sensory loss in his feet. *Id*. The assessment was right shoulder contusion. *Id*. MLP Perez prescribed Meloxicam and discontinued Ibuprofen. D.E. 22, Appx. at 4 ¶ 21, BN 43-44. MLP Perez also placed Plaintiff on medical duty status, confining him to the living quarters and limiting all sport activities until May 28, 2010. D.E. 22 at BN 60.

On June 7, 2010, Plaintiff sent an Inmate Request To Staff Member to HSA Chavez complaining that neither Meloxicam nor Ibuprofen has helped his chronic nerve pain. D.E. 22, Appx. at 4 ¶ 23, BN 45. He indicated that the Ibuprofen helped somewhat but the dosage was not

adequate.  *Id.*  On June 12, 2010, HSA Chavez responded by instructing him to discuss the issue with his provider.  *Id.*

On June 24, 2010, Plaintiff sent an Inmate Request To Staff Member to HSA Chavez complaining about chronic pain.  D.E. 22, Appx. at 4 ¶ 24, BN 46.  Plaintiff was dissatisfied with the pain medications prescribed, alleged that both his pain medications had been discontinued and that he had been without pain medication for several days, and demanded "real pain medication." *Id.*  He also alleged that it made no sense to allow MLP Avila to continue to be his Physician Assistant after three bad episodes, witnessed by staff, and reflected in an affidavit Plaintiff filed against her for her gross misconduct.  *Id.*  On July 14, 2010, Ms. Guerroro, acting for HSA Chavez, responded that Plaintiff had been prescribed Ibuprofen but, if he needed to be evaluated for additional pain management, he needed to report to sick call.  *Id.*

On June 30, 2010, Plaintiff reported to sick call for refill of his medication for the sprain and strain of his neck.  D.E. 22, Appx. at 4 ¶ 25, BN 47-48.  He requested Ibuprofen.  *Id.*  Noting Plaintiff's report that Ibuprofen works better than the Meloxicam, MLP Avila prescribed Ibuprofen. *Id.*  The record of that encounter reflects a pain scale of 0.  *Id.*

On August 9, 2010, Plaintiff was seen by MLP Avila in the Special Housing Unit sick call. D.E. 22, Appx. at 4 ¶ 26, BN 49-51.  He requested medication refill.  *Id.*  Several medications were renewed including Ibuprofen 800 mg for the sprain and strain of his neck.  *Id.*  His pain scale was again noted as 0 and it was noted that Plaintiff was pleasant and cooperative and had a normal gait. *Id.*

On October 3, 2010, Plaintiff was seen in the Special Housing Unit with complaints of deep intermittent aching pain in his chest-sternal with a pain scale of 5 and lasting less than 30 minutes

14

with an onset of 1-2 weeks and exacerbated by exercise and going outside and relieved with rest. D.E. 22 at BN 52.   After an abnormal EKG, Plaintiff was transported to Providence Memorial Hospital.  D.E. 22 at BN 54-55.  There, x-rays were taken and he was diagnosed with GERD.  D.E. 22 at BN 55.  He was returned to FCI La Tuna that same day.  *Id*.  At that time he described his pain as burning; his gait was noted to be slow and steady.  D.E. 22 at BN 53.

<u>**DISCUSSION**</u>

I.    **Legal Standards:  Dismissal and Summary Judgment**

The court is required to dismiss a suit if the court determines that the action is frivolous or malicious or does not state a claim upon which relief may be granted.  *Black v. Warren*, 134 F.3d 732, 733 (5th Cir. 1998); 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1).   In determining whether a complaint fails to state a claim upon which relief may be granted, the court must accept all well-pleaded facts as true and view them in a light most favorable to the plaintiff.  *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002).  Pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 596 (1972).  Still, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007).  A court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Although a complaint need not contain "detailed" factual allegations, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, [] on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citations

omitted).  Thus, to survive a motion to dismiss, a plaintiff's complaint must allege sufficient facts "to state a claim to relief that is plausible on its face."  *Id.* at 570.  Nevertheless, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Id.* at 556.

A motion to dismiss for failure to state a claim is treated as one for summary judgment where matters outside the pleadings are presented to and not excluded by the court.  Fed. R. Civ. P. 12(d). Summary judgment is proper where the pleadings and evidence on file demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is no genuine issue for trial if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986).  A party seeking summary judgment bears the initial burden of proving the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986).  Once the movant carries this burden, the burden shifts to the nonmovant to show the existence of a genuine issue for trial.  *Id.*, at 324-325. Conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513(1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find for [the nonmoving party], there is no genuine issue for trial, and summary judgment is proper.  If, on the other hand, the factfinder could reasonably find in [the nonmovant's] favor, then

16

summary judgment is improper." *Kelley v. Price-Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (internal citations omitted).

## II.     Dismissal of Defendants Dr. Tharp and HSA Chavez

Defendants' motion to dismiss or for summary judgment asserts that defendants Tharp and Chavez should be dismissed from the case.  D.E. 22 at 1-3.  Plaintiff named Richard Tharp, M.D. as a defendant.  D.E. 5 at 1.  According to Defendants, no Richard Tharp, M.D. worked at FCI La Tuna.  D.E. 22 at 2-3 n. 2.  There was a Clinical Director whose last name was Tharp, but he was assigned to La Tuna from May 2005 to August 2007, and therefore would not have treated Plaintiff for any medical problems within the relevant time period between 2009 and 2010.  *Id.*  The Court notes that he also would not have been at FCI- La Tuna in 2004 to confiscate Plaintiff's shoes, supports, and braces, as alleged.  Defendants argue that Plaintiff therefore failed to name and serve the proper party and that any claims against Richard Tharp, M.D., should be dismissed.  *Id.* Defendants further argue that HSA Chavez has absolute immunity with respect to any claims alleged against him under *Bivens*, because he is a commissioned officer in the United States Public Health Service.  D.E. 22 at 3; 42 U.S.C. § 233(a); *Hui v. Castaneda*, __U.S.__, 130 S.Ct. 1845, 1848, 1850-51 (2010).

In response to Defendants' arguments, Plaintiff filed a motion to withdraw Richard Tharp, M.D. and HSA Chavez from his lawsuit.  D.E. 33.  In light of Plaintiff's response, and for the reasons stated above, the Court recommends that Plaintiff's claims against Defendants Richard Tharp, M.D. and HSA Chavez be dismissed with prejudice.

### III.    Motion to Strike Plaintiff's Summary Judgment Evidence

Defendants move to strike Plaintiff's summary judgment evidence, arguing that it is not competent summary judgment evidence.  D.E. 40 at 2.  Defendants contend that the declaration in his response fails to comport with Rule 56(c)(4) of the Federal Rules of Civil Procedure, that his Exhibits are not authenticated, do not fall under any of the Rule 902 exceptions, are not relevant to Plaintiff's complaint, are inadmissible under Rules 403 and 404(b), and contain hearsay.  *Id.*, at 3-5. Defendants' motion is well taken.  Plaintiff's exhibits are inadmissible and should be stricken. However, even if they were not stricken, they do not support Plaintiff's claims and therefore, consideration of such evidence would not alter this Court's recommendation.

### IV.    Plaintiff's *Bivens* Claims

Plaintiff asserts three related claims against Defendants pursuant to *Bivens*.  In *Bivens*, the Supreme Court held that an individual injured by a federal agent's alleged violation of the individual's constitutional rights may bring an action for damages against the agent, providing deterrence against and relief for the deprivation of federally guaranteed rights caused by a person acting under color of federal law.  *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999 (1971).  *Biven*s mirrors 42 U.S.C. § 1983, which applies to a person acting under color of state law.  *Izen v. Catalina*, 398 F.3d 363, 367 n. 3 (5th Cir. 2005). Thus, to state a *Bivens* claim, Plaintiff must allege sufficient facts to establish that the defendants are federal actors and that the defendants, while acting under color of federal law, violated Plaintiff's rights under the Constitution or laws of the United States.  *Id.  Bivens* provides a cause of action against federal agents only in their individual capacities and requires a showing of personal

involvement. *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999); *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998).

### A.        Eighth Amendment—Cruel and Unusual Punishment—Medical Needs

The Eighth Amendment forbids cruel and unusual punishment, which in the context of denial of medical treatment has been defined as deliberate indifference to the serious medical needs of prisoners amounting to unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *Estelle v. Gamble*, 429 U.S. 97, 104-105, 97 S.Ct. 285, 291 (1976); *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997). A prisoner must allege acts or omissions sufficiently harmful to evince deliberate indifference, an extremely high standard to meet. *Farmer v. Brennan*, 511 U.S. 825, 834, 847, 114 S.Ct. 1970, 1977, 1984 (1994). To prove a claim of deliberate indifference, a prisoner must establish that (1) he was deprived of a medical need that is, objectively, "sufficiently serious," and (2) the defendant knew of and disregarded "an excessive risk to [the prisoner's] health or safety." *Id*., at 837. In other words, the prisoner must show that: "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm to occur." *Id.; Thompson v. Upshur County*, 245 F.3d 447, 458-459 (5th Cir. 2001).

"[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. Complaints of negligence, neglect, or even medical malpractice do not give rise to constitutional claims. *Fielder v. Bosshard*, 590 F.2d 105, 107 (5th Cir. 1979). "Medical decisions that may be characterized as 'classic examples of matters for medical judgment,' such as whether one course of treatment is

preferable to another, are beyond the [Eighth] Amendment's purview. Such matters are questions of tort, not constitutional law." *Snipes v. Detella,* 95 F.3d 586, 590-91 (7th Cir. 1996), cert. denied, 519 U.S. 1126 (1997) (quoting *Estelle v. Gamble,* 429 U.S. 97, 107, 97 S.Ct. 285, 292-93 (1976)). Plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Medical records reflecting treatment including sick-calls, exams, diagnoses, and medication, can rebut allegations of deliberate indifference. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993).

### 1.    MLP Avila

Although Plaintiff names MLP Avila as a defendant, Plaintiff does not allege any specific act or omission in which she was personally involved that Plaintiff alleges violated his Eighth Amendment rights.   *See* D.E. 39 at 2.   Plaintiff generally alleges that MLP Avila aided Dr. Altenberg's deliberate indifference because, as a full-time medical assistant she was assigned to be involved in Plaintiff's medical treatment.   D.E. 5 at 13 ¶¶ 74, 77.   MLP Avila's name appears in several of the records before the Court.   Aside from medical records that reflect her treating Plaintiff, she responded to at least one of his Inmate Requests to Staff, telling him to make a sick call.   *See* D.E. 22 at BN 59.   In a subsequent Inmate Request to Staff to MLP Avila, Plaintiff stated that he had given his sick call slip to MLP Avila and had signed the hospital log book and so had done his part to be placed on call out.   *Id*.   In another record, Plaintiff vaguely mentions having had three bad episodes with MLP Avila, but nowhere does he allege specifics as to those encounters.   D.E. 22 at BN 46.

Assuming the truth of all Plaintiff's allegations, Plaintiff has failed to allege facts to state a claim of deliberate indifference against MLP Avila that is plausible on its face and sufficient to raise a right to relief above the speculative level. *See Twombly*, 550 U.S. at 555, 570. Plaintiff has therefore failed to state a claim upon which relief could be granted as to MLP Avila and she should be dismissed from the cause. Even if Dr. Altenberg's actions or omissions could be attributed to MLP Avila, however, as discussed below, Defendants would be entitled to judgment as a matter of law.

### 2.      Dr. Altenberg

Plaintiff claims that Defendants acted with deliberate indifference to Plaintiff's serious medical needs because he failed to treat chronic pain in Plaintiff's neck, hips, legs, back, feet, and arms that Plaintiff believes was caused when roofing material fell on him in 2001, and that such failure has caused a permanent limp in Plaintiff's right leg. D.E. 5 at 5-7; 22 at 5. Plaintiff asserts that Defendants were deliberately indifferent to Plaintiff's serious medical needs when Plaintiff was subjected to a total deprivation of medical care, the mandated community standard of care, or the required mandated medical care, and when Dr. Altenberg refused to treat, delayed or prevented proper treatment of Plaintiff's chronic pain, from August 2009 through October 2010. D.E. 5 at 2-3 ¶¶ 3-4, 8, 15, at 8 ¶ 44 (G-J), 15 ¶ 90. More specifically, Plaintiff contends that Defendants were deliberately indifferent to Plaintiff's chronic pain, including pain in his legs for which Plaintiff alleges he required special shoes and braces, in the absence of which he has developed a limp that will last the rest of his life. D.E. 5 at 10 ¶ 55. In later pleadings, Plaintiff further alleges that Defendants demonstrated deliberate indifference specifically by not obtaining an MRI to help diagnose the cause of Plaintiff's pain to better treat it. D.E. 34 at 12-14.

21

Plaintiff's broad allegation that he was subjected to a total deprivation of medical care is refuted by the medical records that both he and Defendants have submitted in this case. Such records show that Plaintiff was seen, examined, and treated on numerous occasions during the period Plaintiff said he received no medical care.

Plaintiff claims that Defendants delayed or prevented Plaintiff's obtaining adequate medical attention. D.E. 5 at 15 ¶ 86. Delay in medical care violates the Eighth Amendment only where such delay is due to deliberate indifference and results in substantial harm. *Mendoza*, 989 F.2d at 195. Plaintiff's dislike for the prison system health services procedures is evident from the record. *See* e.g., D.E. 5, Exh. 10 at 30, 34, 35. To the extent Plaintiff did not receive medical attention or treatment in what he believed to be a timely manner, as discussed further below, even viewing the evidence as a whole in the light most favorable to Plaintiff, no rational trier of fact could reasonably infer that such delays were due to deliberate indifference.

With respect to Plaintiff's claim that Defendants were deliberately indifferent specifically to his chronic pain, the record reflects that in the 26 months between September 2008 and October 2010, Plaintiff was seen, examined, or treated at least ten times for his chronic pain[5] and at least ten times for other health issues,[6] his pain medications were adjusted at least nine times—often at Plaintiff's request— and at least ten different medications were prescribed in an attempt to relieve

---

[5] *See* D.E. 5, Exh. 10 at 10 (9/29/08); D.E. 22 at BN 4-6 (8/17/09), 7-8 (8/28/09), 12 (10/1/09), 25 (1/14/10), 29-31 (2/16/10), 35-39 (5/23/10), 42 (5/25/10), 47-48 (6/30/10), 49-51 (8/9/10).

[6] See D.E. 5, Exh. 10 at 2-3 (9/21/08 respiratory infection), 13 (10/7/08 urinary problem), 15 (10/24/08 urinary problem), 17 (11/18/08 skin rash), 21 (3/20/09 congestion), 25 (6/16/09 potassium lab test); D.E. 22 at BN 7-8 (8/28/09 itching), 20-21 (11/12/09 breathing treatment), 33-34 (4/23/10 sinus headache, difficulty breathing), 52-58 (10/3/10 Gerd- taken to hospital).

Plaintiff's chronic pain.[7] No rational fact-finder, viewing the entire record in the light most favorable to Plaintiff, could reasonably infer that Defendants were deliberately indifferent to Plaintiff's general medical needs or specifically to his chronic pain, or that he was denied treatment.

Plaintiff also claims that Dr. Altenberg refused to provide medical treatment for Plaintiff's pain. Plaintiff relies on an encounter on August 17, 2009, alternately alleging that Dr. Altenberg stated that he *would not* fix Plaintiff's injury, and that he *cannot* do anything to fix Plaintiff's injury. D.E. 5 at 8 ¶¶ 44(G)-(J), at 13 ¶¶ 70-71. In Plaintiff's grievance, attached to his complaint, Plaintiff alleged that Dr. Altenberg told Plaintiff that there was nothing that *could be done* for Plaintiff. D.E. 5, Exhs. 1 at 1, 2 at 1, 3 at 1. In both versions, Plaintiff alleged that Dr. Altenberg recited Humpty Dumpty before making this comment, called Plaintiff a crybaby, and expressed disbelief either that Plaintiff had been injured while previously in custody or that Plaintiff's pain was a result of such injury. *Id.* In one grievance, Plaintiff said that the real issue raised in his grievance, which had gone unaddressed, was Dr. Altenberg's unprofessional attitude towards Plaintiff, humiliating him. D.E. 5, Exh. 8 at 1.

The same day Plaintiff alleges Dr. Altenberg refused to treat him, however, Dr. Altenberg discontinued the medication known to cause the side-effects about which Plaintiff had complained

---

[7] See D.E. 5, Exh. 10 at 10-11 (Albuterol & Ibuprofen 9/29/08), 21-23 (3/20/09 Amitriptyline an Ibuprofen renewed); D.E. 22 at BN 7-8 (8/28/09 Bendryl for itching, Motrin), 15 (10/2/09 discontinued Elavil, prescribed Sulindac discontinued Ibuprofen), 16 (10/11/09 discontinued Sulindac, prescribed Indomethacin), 25-26 (1/14/10 Ibuprofen 800 mg prescribed and Ciprofloxacin), 29-31 (2/16/10 Ibuprofen 400 mg), 42-43 (5/25/10 Meloxicam prescribed, discontinued Ibuprofen), 47-48 (6/30/10 changed back to Ibuprofen b/c Plaintiff said it worked better).

in writing in seeking the appointment,[8] but continued other medications, including pain medications. D.E. 22 at BN 4-6.  Regardless of whether Dr. Altenberg's attitude and communication during the medical consultation was objectively or merely subjectively offensive and humiliating to Plaintiff, it is not an issue of constitutional magnitude.  Further, even assuming Dr. Altenberg stated that he *would not* do anything to treat Plaintiff, the record reflects that he did.  When viewed in the light most favorable to Plaintiff, the numerous evaluations, clinical assessments, and treatments Plaintiff was provided for his pain, no reasonable factfinder could infer that Dr. Altenberg refused to treat Plaintiff, intentionally treated him incorrectly, or was otherwise deliberately indifferent to Plaintiff's serious medical needs.

Additionally, in his response to Defendants' dispositive motion, Plaintiff argues that Defendants never obtained an MRI, which would have been the "Gold Standard" in imaging and diagnostics for Plaintiff's injury.  D.E. 34 at 14 ¶ 103.  Inmates, however, are "not entitled to unqualified access to health care, the "best that money could buy," *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992), or the treatment of their choosing, rather they are constitutionally entitled to medical care adequate to provide "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. at 834.  In balancing the needs of the prisoner versus the needs of the penal institution, the test "is one of medical necessity and not one simply of desirability." *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir. 1981).  Plaintiff's disagreement with Defendants as to the diagnostic tools or treatment he required, what medical care was appropriate, or the course of treatment

---

[8] Plaintiff had sent an inmate request to Dr. Altenberg on August 13, 2009, stating that he felt something had changed in his body and was not right, his pain was worse, he had swelling in his legs and had been retaining a lot of water.  D.E. 5, Exhs. 1, 10 at 36.  Bloating and general ill feeling are possible side-effects of Amitriptyline, the medication Dr. Altenberg discontinued. D.E. 22 at BN 5; *see* http://www.drugs.com/amitriptyline.html.

determined by Defendants does not evince deliberate indifference to serious medical needs. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff argues that Defendants knowingly failed to use the correct diagnostic method, leading to an erroneous diagnosis and treatment. D.E. 34 at 12 ¶ 92. The record reflects that Plaintiff's range of motion in the area complained of was routinely evaluated and he was found to have full range of motion, and he was routinely checked for signs of tenderness, swelling, neuropathy, and atrophy. D.E. 5, Exh. 10 at 11; D.E. 22 at BN 7-10, 25-28. He tested negative for Drawer sign. D.E. 22 at BN 12-14. He tested negative on the bilateral straight leg test. D.E. 22 at BN 29-32. His ability to ambulate and his gait were observed to be normal or slow and steady. D.E. 22 at BN 29, 49, 53. And his pain scale was routinely noted, ranging from 0 to 10. D.E. 22 at BN 7, 25, 40, 42, 47, 49, 52, 55. He was assessed to have sprain and strain of the neck and back and lower leg joint pain, probably degenerative joint disease. D.E. 22 at BN 7, 27.

While Plaintiff argues that he should have been given an MRI, nothing in the record reflects that he requested an MRI or complained tat he had not been provided or had been denied an MRI. The cause of Plaintiff's pain had been diagnosed, physical examination tests had been performed to rule out other possible causes of the pain, and there is nothing to indicate that Defendants considered an MRI necessary to diagnosis or determination of treatment and intentionally, or with deliberate indifference, decided to forego it. "What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner." *Snipes*, 95 F.3d at 591. Plaintiff has provided no evidence from which a rational trier of fact could conclude, viewing all of the evidence in the light most favorable to Plaintiff, that Defendants deliberately, or with deliberate indifference, assessed, diagnosed, or treated Plaintiff incorrectly.

Plaintiff has submitted what appears to be more recent medical records from the BOP at Fort Dix (FTD). D.E. 34, Exh. 3. One record, dated August 1, 2011, requested a consultation with an Orthopedic Surgeon to evaluate whether Plaintiff needed a bilateral knee brace with hinges or a bilateral ankle brace. D.E. 34, Exh. 3 at 2. The note stated that Plaintiff had been issued such equipment at a prior institution, but it was removed upon his arrival to FTD. *Id.* The request was categorized as non-emergent but medically necessary. *Id.* Included in the list of Plaintiff's health problems, added on August 8, 2011, was unspecified knee pain, joint pain, lower leg pain, neck sprain and strain, and history of noncompliance with medical treatment. *Id.* A handwritten report of the consultation reflects that Plaintiff was a 47 year old man with bilateral knee pain and right ankle pain with a remote history of a "sports injury" involving a partial ACL tear. D.E. 34, Exh. 3 at 3. He has pain on climbing stairs and his knee gives way. *Id.* He had braces in the past which were helpful. *Id.* His current medications included Motrin. *Id.* He had x-rays in March 2011 which showed degenerative joint disease in his knees, his ankles were negative. *Id.* Upon exam, there was mild effusion, full range of motion, slight laxity in his left ACL, ankle exam showed full range of motion but tenderness medially. *Id.* The impression he concluded was that Plaintiff had mild degenerativity in his knees and tendonitis in the right ankle. *Id.* It was recommended that Plaintiff continue the Motrin, and obtain knee braces right and left and a right ankle brace. *Id.*

Another record, dated August 15, 2011, is a clinic encounter administrative note, noting that a consultation encounter was performed at Heath Services where Plaintiff was seen by an orthopedic surgeon whose impression was "Degenerative knees (mild) Tendinitis, ankle right," and who recommended that Plaintiff continue Ibuprofen and obtain knee braces (left and right) and right ankle

brace.  D.E. 34, Exh. 3 at 1.  A medical duty status form for Plaintiff reflects that he was provided

a knee brace on October 18, 2011.  D.E. 34, Exh. 3 at 5.

While these unauthenticated records might reflect that Plaintiff received a different course

of diagnostic exams and different treatment by different doctors almost a year after he left FCI La

Tuna, disagreements between doctors of the proper course to pursue does not establish deliberate

indifference.  *See Norton*, 122 F.3d at 292.

Viewing all of the summary judgment evidence and all justifiable inferences to be drawn

from the underlying facts in the light most favorable to Plaintiff, no factfinder could reasonably find

that Defendants acted with deliberate indifference to Plaintiff's serious medical needs.

### B.    *Bivens* Retaliation Claims

Plaintiff's complaint, construed liberally, alleges that Dr. Altenberg discontinued Plaintiff's

chronic pain medication in retaliation against Plaintiff for filing a grievance against him.  D.E. 5 at

9 ¶¶ 47, 49, Exhs. 3, 4.  Prison officials may not retaliate against an inmate for using the grievance

system, complaining to a supervisor about misconduct, or accessing the courts.  *See Woods v. Smith*,

60 F.3d 1161, 1164 (5th Cir.1995), *cert. denied*, *Palermo v. Woods*, 516 U.S. 1084, 116 S.Ct. 800

(1996); *Gibbs v. King,* 779 F.2d 1040, 1046 (5th Cir.), *cert. denied,* 476 U.S. 1117, 106 S.Ct. 1975

(1986).  To state a claim of retaliation, a prisoner must allege facts which, if proved, would establish

(1) Plaintiff exercised a specific constitutional right, (2) the defendant had the intent to retaliate

against Plaintiff for his exercise of that right, (3) a retaliatory adverse act occurred, and (4) causation,

i.e., "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson*

*v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citing *Woods v. Smith*, 60 F.3d at 1166).  "The

inmate must produce direct evidence of motivation or 'allege a chronology of events from which

retaliation may plausibly be inferred.'" *Woods v. Smith,* 60 F.3d at 1166 *(quoting Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988)).

Plaintiff's medical records reflect that Plaintiff was seen by Dr. Altenberg on August 17, 2009.  D.E. 22 at BN 4-6.  Administrative notes entered at 8:30 indicate that after Dr. Altenberg advised Plaintiff that he could not do anything for old injuries that he sustained years ago, Plaintiff said he wanted to call the lieutenant and left.  D.E. 22 at BN 4.  At 9:16 the same day, Dr. Altenberg entered an administrative note renewing most of Plaintiff's medication orders, but immediately discontinuing Amitriptyline, which Plaintiff had been receiving each evening in the pill line.  D.E. 22 at BN 5-6.  The reason stated for discontinuation was "discontinue."  *Id.*  Other orders discontinuing medication were also immediate and contained no reason other than "discontinue." D.E. 22 at BN 15.  Plaintiff's grievance complaining of Dr. Altenberg's actions on August 17, 2009, was dated August 19.  D.E. 5, Exh. 1.  Plaintiff alleges that he was informed that his medication was discontinued on August 20th, but provides no summary judgment evidence to rebut the record, which reflects that the order to discontinue the medication was entered on August 17th.  D.E. 5, Exh. 3 at 1.

It cannot plausibly be inferred that Dr. Altenberg discontinued Plaintiff's medication on August 17th in retaliation for Plaintiff filing a grievance against him on August 19th.  Even if a retaliatory motive could be reasonably inferred from Dr. Altenberg discontinuing the medication after Plaintiff left his appointment to speak with the lieutenant, the requisite causation cannot be reasonably inferred from the evidence in the record, even viewed in the light most favorable to Plaintiff.

As previously discussed, plaintiff has failed to establish deliberate indifference on the part of Dr. Altenberg or any other prison official.  Nor has Plaintiff provided any evidence to support an inference that Plaintiff's medication would not have been discontinued on August 17th but for a retaliatory motive.  As noted above, Plaintiff had been complaining that his medication was not successful in alleviating his pain, that he had swelling in his knees, ankle, and shins due to water retention, and that he had a general sense that something had changed and was not right with his body.  D.E. 5, Exh. 10 at 36.  Bloating and a general ill feeling are possible side-affects of Amitriptyline.[9]  Significantly, Plaintiff's other pain medication, Ibuprofen, was renewed.  D.E. 22 at BN 5.

Viewed in the light most favorable to Plaintiff, no rational trier of fact could reasonably conclude that Dr. Altenberg discontinued Plaintiff's prescription for Amitriptyline in retaliation for Plaintiff having pursued a grievance against him.

### C.    *Bivens* Cover-Up: Due Process in the Grievance Procedure Claim

Plaintiff alleges that his original work injury, his medical treatment, and his grievance complaints were all covered up by Defendants and Warden Bragg in his grievance proceedings.  *See* D.E. 5 at 2 ¶ 6, at 10 ¶ 51, 52, at 15 ¶ 90; at 18 ¶ 102-103.  To the extent Plaintiff claims Defendants failed to provide accurate medical information for review in the grievance process and therefore delayed or prevented Plaintiff's receiving proper medical attention, Plaintiff's claims are entirely conclusory.  *Id*.  Plaintiff has failed to provide any evidence from which a rational trier of fact could reasonably infer that Defendants provided inaccurate information.

---

[9] *See* http://www.drugs.com/amitriptyline.html

29

A review of Plaintiff's grievance does reflect that Warden Bragg did not specifically address all of Plaintiff's complaints, as Plaintiff alleges. D.E. 5 at 9. Plaintiff, however, has no due process liberty interest right in having his grievance resolved to his satisfaction. *See Geiger v. Jowers*, 404 F.3d 371, 374-75 (5th Cir. 2005); *Jones v. Shabazz*, No. H-06-1119, 2007 WL 2873042, at *21 (E.D. Tex. Sept. 28, 2007). Nor did Plaintiff name Warden Bragg as a defendant in this action. Moreover, Plaintiff cannot show that he was prejudiced by the way his grievance was addressed; his allegations have been considered in this action and he does not argue that the medical records are inaccurate (except where noted above). No rational trier of fact could reasonably conclude that there was a cover up in his grievance procedure violating Plaintiff's constitutional rights.

## V.      Qualified Immunity

Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1995) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33, 111 S.Ct. 1789, 1793-94 (1991)). The Court finds that the Plaintiff has failed to present summary judgment evidence from which a rational trier of fact could reasonably conclude that Defendants violated Plaintiff's constitutional rights. Therefore the court declines to address the issue of qualified immunity.

## VI.     Federal Tort Claims Act

Plaintiff's complaint does not explicitly attempt to assert a claim of negligence against Defendants. D.E. 5. Construing his complaint liberally, however, such claim might be inferred. To the extent, if any, Plaintiff intended to assert such claim, it should be dismissed for lack of jurisdiction and for failure to state a claim upon which relief could be granted.

The Federal Tort Claims Act ("FTCA") waives the United States' immunity from suit and provides the exclusive remedy in limited circumstances for tort claims against the United States, its agencies, and its employees acting within the scope of their employment. *McGuire v. Turnbo*, 137 F.3d 321, 324 (5th Cir. 1998), (citing 28 U.S.C. §§ 2674, 2679); *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994); *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (United States immune from suit except where it consents to be sued). Individuals, including federal prison inmates, may thus bring negligence suits against the United States pursuant to the FTCA for the negligent acts or omission of federal employees. *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 1851 (1963).

Plaintiff has explicitly sued Defendants only in an individual capacity, and explicitly excluded the United States as a Defendant. D.E. 5 at 1, 4 ¶¶ 19, 20. Proper FTCA defendants include only the United States, it's agencies, or employees acting in their official capacity. *See* 28 U.S.C. § 2679(b)(1); *Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988) (FTCA claims not cognizable against individual defendants in their individual capacities.). Thus, any FTCA claim asserted should be dismissed for failure to state a claim upon which relief could be granted because Defendants are not proper defendants in such an action.

Furthermore, the FTCA provides that "[a]n action shall not be instituted against the United States . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing ..." 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113 (1993). Complying with this exhaustion requirement is a jurisdictional prerequisite to filing a lawsuit in a district court under the FTCA. *Cook v. United States Dep't of Labor*, 978 F.2d 164 (5th Cir. 1992). Plaintiff has not established that he has

exhausted his administrative remedies under the FTCA, and therefore any such claim should also be dismissed for lack of jurisdiction.

## VII.    Plaintiff's Motion for Declaratory Judgment

Plaintiff filed a motion asking this Court to enter a declaratory judgment stating that an MRI diagnosis belonged in Plaintiff's chronic pain and suffering treatment by Dr. Altenberg.  D.E. 49 at 14.  The Court finds that such a declaratory judgment is inappropriate in this case. To pursue prospective equitable relief such as an injunction or declaratory judgment, Plaintiff must allege a likelihood of future violations of Plaintiff's rights by Defendant, not simply future effects from past violations.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 109-110, 103 S.Ct. 1660, 1669-1670 (1983).  Plaintiff is no longer housed at FCI-La Tuna and is no longer under the care of Dr. Altenberg. Plaintiff has not alleged any likelihood that he would be under Dr. Altenberg's care in the future or that Dr. Altenberg would repeat the acts and omissions of which Plaintiff complains in this suit. Also, Plaintiff essentially asks this Court to decide a fact issue that is not relevant to the disposition of this cause.  The Court declines to do so.  Furthermore, although the Court recommends that Plaintiff's claims be dismissed or denied in this action, there may be other remedies at law available for Plaintiff to pursue, making equitable relief all the more inappropriate.

## CONCLUSION

For the reasons stated above, this Court recommends the following:

(1)    Defendants' motion to dismiss (D.E. 22 at 1-3), and Plaintiff's motion to withdraw his claims against Defendants Dr. Tharp, and HSA Chavez, (D.E. 33), be **GRANTED**;

(2)    Plaintiff's claims against MLP Avila be **DISMISSED** for failure to state a claim upon which relief could be granted;

(3)     Defendants' motion to dismiss or for summary judgment, (D.E. 22), be **GRANTED** and Judgment be entered in Defendants' favor;

(4)     Plaintiff's FTCA claims, if any, against Defendants be dismissed for failure to name a proper defendant and for lack of jurisdiction;

(5)     Plaintiff's motion for declaratory judgment, (D.E. 49), be **DENIED**; and

(6)     Any other pending motions, including Defendants' motion to strike, (D.E. 40), be **DENIED** as **MOOT**.

The Court further **ORDERS** that the clerk include a copy of the most up to date docket sheet in mailing this Report and Recommendation to Plaintiff, and out of an abundance of caution, to write "Legal Mail" on the envelope.

**SIGNED** and **ENTERED** on January 18, 2013.

ROBERT F. CASTANEDA
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN 14 (FOURTEEN) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT, SHALL BAR YOU, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE. FED. R. CIV. P. 72 (EFFECTIVE DEC. 1, 2009).**